

RECEIVED
MAR - 4 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| EDDIE HAYMON | CIVIL ACTION NO. 05-1309 |
| VERSUS | JUDGE DOHERTY |
| UNION PACIFIC RAILROAD CO., ET AL. | MAGISTRATE JUDGE METHVIN |

**MEMORANDUM RULING**

Pending before this Court is the Motion for Summary Judgment [Doc. 44] filed by defendant Union Pacific Railroad Company ("Union Pacific"). UP seeks dismissal of plaintiff Eddie Haymon's ("Haymon") claims on grounds Haymon was not a "borrowed employee" of UP at the time of his accident, and, therefore, Haymon's claims alleged pursuant to the Federal Employer's Liability Act, 45 U.S.C. §51, *et seq.* ("FELA claims") should be dismissed. The motion is opposed by plaintiff [Doc. 47]. For the following reasons, the motion is DENIED.

**I.  Factual and Procedural Background**

Haymon brought this action pursuant to the Federal Employer's Liability Act, 45 U.S.C. §51, *et seq.* ("FELA"),[1] to recover damages for injuries he sustained on August 21, 2002 while working

---

[1] 45 U.S.C. 51 states:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

with a UP maintenance crew. Haymon alleges at the time of his injury, he was employed by W.T. Byler Co., LP as an equipment operator assigned to W.T. Byler's Railroad Division. Haymon alleges on the date of the accident, he was part of a two-man W.T. Byler dump truck/back hoe team changing out cross ties alongside UP railroad tracks located near Alexandria, Louisiana.

According to Haymon, he and his co-worker – a man named "Bobby" – had an agreement whereby Haymon and Bobby took turns operating the back hoe and driving the truck. Haymon testified on the date of the accident, it was his turn to drive the truck, but a UP supervisor intervened and told Bobby that Haymon "needed to be on the rail working on the rail itself instead of sitting up there in the truck."[2] Mr. Haymon testified he complied with that order and was subsequently ordered by the UP supervisor to help the UP workers gather and move plates. According to Haymon, the UP supervisor also ordered Haymon to get water out of the back of a truck and hand it out to the UP employees. At his deposition, Haymon testified he fell while exiting the truck, thereby sustaining his injuries.

At the time of Haymon's work for UP, there existed a 'Contract for Roadway Maintenance" between UP and W.T. Byler, which states, *inter alia*,

> The Contractor and the agents and employees of the Contractor are not and shall not be considered as employees of the Railroad. The contractor shall be and remain an independent contractor and nothing herein contained shall be construed inconsistent with that status. Notwithstanding such status, any employee shall be removed from the work by the Contractor or any assignee or subcontractor at any time for incompetence, neglect of duty, or misconduct or whenever such employee shall not

---

Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.

[2] See Deposition of Eddie Haymon, attached as Exhibit 1 to UP's Motion for Summary Judgment, at pg. 38.

be acceptable to the Railroad Representative. The Contractor agrees to indemnify the Railroad from any expense, claims, attorney's fees, court costs or damages whatsoever, which may arise from removing the work any employee or employees, either of the Contractor or any assignee or subcontractor, as provided in this section and defend the Railroad against any litigation brought by or on behalf of such employees. The railroad shall have no control over the employment, discharge, compensation of and service rendered by Contractor's employee or agents.[3]

Haymon filed suit against W.T. Byler and UP, alleging he was employed by both entities at the time of his injury and seeking damages for same.[4] Although Haymon subsequently dismissed his claims against W.T. Byler, UP filed a third-party demand against W.T. Byler, alleging UP is entitled to complete defense and indemnity for claims asserted by Haymon and, further, that UP is an additional insured under certain policies of insurance issued to W.T. Byler, which were in full force and effect at the time of Mr. Haymon's alleged accident. UP alleges it is entitled to coverage for Haymon's injuries pursuant to those policies.

All parties appear to agree that, as a matter of law, if Mr. Haymon is determined not to be a "borrowed employee" of UP under FELA, Haymon's claims against UP should be dismissed.

---

[3] See "Contract for Roadway Maintenance" at p. 6, Section 14, attached as Exhibit "2" to UP's Motion for Summary Judgment.

[4] In his "Complaint Under the Federal Employer's Liability Act for Damages," Haymon alleges his lawsuit is brought "pursuant to the Federal Employer's Liability Act."

In his opposition brief, Haymon argues there are three separate and distinct legal theories under which he can establish his employment with Union Pacific, all as set forth in *Kelley v. Southern Pac. Co.*, 419 U.S. 318, 324, 95 S.Ct. 472, 42 L.Ed. 2d 498 (1974);

> Under common law principles, there are basically three methods by which a plaintiff can establish his "employment" with a rail carrier for FELA purposes even while he is nominally employed by another. First, the employee could be serving as the borrowed servant of the railroad at the time of his injury. See Restatement (Second) of Agency § 227; *Linstead v. Chesapeake & Ohio R. Co.*, 276 U.S. 28 (1928). Second, he could be deemed to be acting for two masters simultaneously. See Restatement § 226; *Williams v. Pennsylvania R. Co.*, 313 F.2d 203, 209 (CA2 1963). Finally, he could be a subservant of a company that was in turn a servant of the railroad. See Restatement § 5 (2); *Schroeder v. Pennsylvania R. Co.*, 397 F.2d 452 (CA7 1968).

## II.    Law and Discussion

UP seeks dismissal of Haymon's claims against it on grounds Haymon is not a "borrowed employee" of UP, and, accordingly, Haymon's FELA claims should be dismissed.

The issue of whether a "borrowed employee" relationship exists is a matter of law for the district court to determine. *Gaudet v. Exxon*, 562 So.2d 351, 357 (5th Cir. 1997); *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 314 (5th Cir. 1969); *Capps v. N.L. Baroid-NL Industries, Inc.*, 784 F.2d 615, 617 (5th Cir. 1986), *cert. denied*, 107 S.Ct. 141, 93.

The Fifth Circuit has set forth nine factors to be evaluated in determining whether an employee is a "borrowed employee:" (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation? (2) Whose work is being performed? (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer? (4) Did the employee acquiesce in the new work situation? (5) Did the original employer terminate his relationship with the employee? (6) Who furnished tools and place for performance? (7) Was the new employment over a considerable length of time? (8) Who had the right to discharge the employee? (9) Who had the obligation to pay the employee? *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988), citing *Capps v. N.L. Baroid-NL Industries, Inc.*, 784 F.2d at 616-17; *West v. Kerr McGee Corporation*, 765 F.2d, 526, 530 (5th Cir. 1985).

The first factor – frequently referred to as the "control" factor – has been considered the central issue of "borrowed employee" status in some Fifth Circuit cases, although not necessarily determinative. *Melancon*, 834 F.2d at 1244-45, *citing Hebron v. Union Oil Company*, 634 F.2d 245, 247 (5th Cir. 1981). *See also Brown v. Union Oil Co. of California*, 984 F.2d 674, 676 -677 (5th Cir.

1993) ("No single factor, or combination of them, is determinative; although, in many of our prior cases, this court has considered the first factor - control - to be the central factor. *But see Gaudet v. Exxon Corp.*, 562 F.2d 351, 356 (5th Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978) (Fifth Circuit de-emphasized the control factor and stressed the importance of the fourth, fifth, sixth, and seventh factors).

It is clear where there exist disputed factual issues regarding any of the "borrowed employee" factors, summary judgment is inappropriate. *See, e.g., Brown*, 984 F.2d at 679 (disputed factual issues concerning the control factor had to be determined before borrowed employee relationship could be determined, and district court should not have taken this issue from the jury).

In support of its argument that Mr. Haymon is not a "borrowed employee" of UP, UP discusses each of the nine factors listed hereinabove and concludes the majority of them weigh against a finding that Mr. Haymon is a "borrowed employee" of UP. With respect to the "control" factor, UP essentially argues Haymon and Bobby's job on the date of Haymon's accident was to use a W.T. Byler dump truck and back-hoe to pick up used cross ties as they were discarded by the railroad repair crews and haul them away. UP further argues once on the worksite, Haymon could be directed as to the specific time and place to perform his work. According to UP, Haymon took his orders (what work to perform) from W.T. Byler and then took suggestion and direction as to the details, (when and where to perform) from UP. Thus, UP argues at the time of Haymon's accident, "Haymon was working with a senior W.T. Byler employee using W.T. Byler equipment on a contracted task."

In support of its argument, UP submits the affidavits of two individuals, James E. "Butch" Moeller, Director of Track Maintenance for Union Pacific Railroad, and Clarence Campbell,

Railroad Maintenance Manager for W.T. Byler Company, L.P., who both attest, in the *exact* same language, which *exactly* mirrors the language of the contract between UP and W.T. Byler, as follows:

> A Union Pacific supervisor would be very unlikely to ask or demand that a W.T. Byler equipment operator depart from the terms of [the contract] or otherwise perform physical work on the railroad track.[5]

In response, plaintiff primarily addresses the "control" factor and argues on the day of the accident, a UP supervisor countermanded the agreement Haymon had with his co-worker, Bobby – who had already agreed that Haymon would drive the dump truck that day – and ordered Haymon to go to a different location to work on the railroad tracks. Furthermore, Haymon argues that at the specific time of his injury, he was acting on a direct order from the UP supervisor to get water out of the back of a truck for UP employees. Thus, Haymon argues he was actually under the control of UP at the time he was injured. Given Haymon's testimony, it appears there are disputed factual issues regarding which entity had control over Haymon at the time of his injury.

The Court notes the circumstances of this case are somewhat unusual, in that neither party has been able to identify any witnesses to Haymon's accident, as UP sets forth in its brief:

> Unfortunately, after an exhaustive search by W.T. Byler and Union Pacific, neither the accident location nor any witnesses to the accident have been identified. In fact, there is no record of anything other than Haymon claiming to have been injured amidst a Union Pacific work detail on August 21, 2002. Haymon's W.T. Byler supervisor of record, Jimmy Adams, has since died. Neither Union Pacific or W.T. Byler has no record of anyone named Bobby working out of the Alexandria station.[6]

Considering the foregoing, it appears at this stage of the litigation, this Court is presented with only the testimony of the plaintiff and the affidavits of UP and W. T. Byler executives who

---

[5] See Affidavit of James E. "Butch" Moeller, attached as Exhibit 6 to defendant's memorandum in support of its motion for summary judgment. See also Affidavit of Clarence Campbell, attached as Exhibit 5 to defendant's memorandum in support of motion for summary judgment.

[6] See UP's Memorandum in Support of Motion for Summary Judgment at pg. 3.

appear to be reciting passages from the contract between UP and W. T. Byler without having any direct knowledge of the actual circumstances of Haymon's work on the date of his alleged accident.

Under these circumstances, this Court concludes Haymon's testimony creates a genuine issue of material fact regarding who had control over him at the time of his injury. As this factor has been considered to be a highly important factor – if not the *most important* factor – for determination of "borrowed employee" status, this Court concludes summary judgment is inappropriate at this time. Therefore, UP's motion for summary judgment is DENIED in its entirety.

THUS DONE AND SIGNED this ____ day of March, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE